UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL A. DOBBIE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CAUSE NO. 3:17-CV-430-JD-MGG |
| | ) |
| CITY OF BREMEN POLICE DEPARTMENT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Before the Court are two motions to dismiss. Defendants Lynn Berndt ("Berndt") and Matthew E. Sarber ("Sarber") (collectively "the Defendant Prosecutors") filed their motion to dismiss under Fed. R. Civ. P. 12(b)(6) on August 31, 2017. The Defendant Prosecutors' motion became ripe on September 29, 2017, without a reply brief, but after Plaintiffs, proceeding *pro se*, filed a response brief in opposition to the motion. Defendants City of Bremen Police Department ("Bremen PD" or "the Department"), Bradley Kile ("Officer Kile"), and Ronald Rybicki ("Officer Rybicki") (collectively "the Police Defendants") filed their Rule 12(b)(6) motion to dismiss on September 1, 2017. The Police Defendants' motion became ripe on September 26, 2017, after Plaintiffs filed a response and the Police Defendants filed a reply.

On May 10, 2018, both motions to dismiss were referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b),

and N.D. Ind. L.R. 72-1(b). [DE 39]. For the reasons stated below, the undersigned recommends that both of the pending motions to dismiss be **GRANTED**.

## I.  RELEVANT BACKGROUND

Through their complaint, Plaintiffs seek compensation for alleged damages resulting from an interaction with Officers Kile and Rybicki ("the Defendant Officers") at the residence of Plaintiff Michael Dobbie ("Michael") on April 2, 2015. On that day, the two Defendant Officers arrested Michael for possession of marijuana. They had arrived at Michael's residence to conduct a "wellness check" on a female guest of Michael's. After finding the guest okay and over several objections, the Defendant Officers conducted a search of the premises, which led to the seizure of marijuana and associated paraphernalia. Michael did not receive *Miranda* warnings during his encounter with the Defendant Officers.

Upon Michael's arrest, the State charged him with possession of marijuana and possession of paraphernalia. Michael posted bond and was released from custody on April 3, 2015. His initial hearing was held on April 14, 2015. As part of his defense, Michael filed a motion to suppress the evidence seized during the April 2, 2015, search of his residence. On March 17, 2016, the Marshall County Superior Court #2 found the warrantless entry, search, and seizure at Michael's residence to be illegal and suppressed the evidence obtained during the search. On June 15, 2016, about 14 months after Michael was arrested, Sarber filed a motion to dismiss the criminal charges, which the Superior Court promptly granted on the same day.

Plaintiffs filed their complaint, which implies an action under 42 U.S.C. § 1983, in this Court on June 2, 2017. Plaintiffs raise four claims. In Count I, Plaintiffs allege that Officers Kile and Rybicki violated Michael's Fourth Amendment rights by conducting the unlawful search of his home on April 2, 2015. [DE 1 at 2]. In Count II, Plaintiffs allege that the Defendant Officers violated Michael's Fifth Amendment rights by "threaten[ing] and forc[ing him] to be a witness against himself[;] depriv[ing] him of his liberty without due process of law[; and] never read[ing] his Miranda rights . . . ." [DE 1 at 3]. In Count III, Plaintiffs allege that Michael "was denied the right to a speedy disposition or trial," as protected by the Sixth Amendment, because the "prosecuting attorneys" took about 14 months to determine they did not have a case against him when "they should have known that the [April 2, 2015,] search was illegal and that [Michael] was not read his Miranda Rights." [DE 1 at 3]. Lastly, in Count IV, Plaintiffs raise a claim of intentional infliction of emotional distress based on the alleged stress and expenses incurred by both Plaintiffs, Michael and Janice Dobbie, as the result of the criminal prosecution of Michael. [DE 1 at 3]. Defendants how challenge Plaintiffs' claims through two motions to dismiss.

## II.  ANALYSIS

### A.  Identifying Proper Defendants

As a preliminary matter, the identity of the proper defendants for each of Plaintiffs' claims is unclear from their complaint. The caption of the complaint names "CITY OF BREMEN POLICE DEPARTMENT, MARSHALL COUNTY DEPUTY PROSECUTORS, BRADLEY KILE, RONALD RYBICKI, LYNN BERNDT, and

MATTHEW E. SARBER, Jointly and Severally" as Defendants. [DE 1 at 1]. However, only Counts I and II expressly reference any of the Defendants named in the caption.

Count I describes conduct by Kile and Rybicki during the April 2, 2015, search, seizure, and arrest. Count II describes additional conduct by the Defendant Officers during the April 2015 incident at Michael's residence. Count III alleges conduct by "prosecuting attorneys" generally without referencing any Defendant named in the caption specifically. Lastly, Count IV alleges no conduct by any Defendant, whether named or unnamed. Instead, Count IV recites the experiences of both Plaintiffs without any express mention of the timing or cause of those experiences.

None of Plaintiffs' four counts name Defendant Bremen PD or explicitly allege any conduct by the Department. In their motion to dismiss, the Police Defendants assume that Plaintiffs included the Department in Counts I, II, and IV in its capacity as the Officers Defendants' employer. The Police Defendants' interpretation is reasonable because police departments are often sued in conjunction with the conduct of their officer employees.

Similarly, none of the four counts expressly reference Defendant Marshall County Deputy Prosecutors ("the Prosecutor's Office") or allege any unique conduct by the Office as separate from Berndt and Sarber individually. In their motion to dismiss, Berndt and Sarber assume that Plaintiffs' caption merely identified them correctly by their job title of Marshall County Deputy Prosecutors presumably without formally raising any complaints against the Office separately. Yet the caption separates the phrase "Marshall County Deputy Prosecutors" from the names of Deputies Berndt and

Sarber with the names of Officers Kile and Rybicki making it difficult grammatically to interpret the phrase "Marshall County Deputy Prosecutors" as a modifier of, or in any way connected to, the names Berndt and Sarber.

Furthermore, the record does not clearly support Berndt and Sarber's interpretation as evidenced by the appearance of counsel for Berndt, Sarber, and the Prosecutor's Office collectively on August 15, 2017 [DE 8[1], DE 9], and May 17, 2018 [DE 40]. Moreover, summonses were returned executed as to Berndt, Sarber, and the Office separately—Berndt and Sarber were served on August 11, 2017 [DE 16, DE 17] and the Office was served on August 10, 2017 [DE 18]. Yet, none of the responsive pleadings on the record have been joined by the Prosecutor's Office. With all that said, Plaintiffs did not object to any of the inferences in the pending motions to dismiss about which of their four counts relate to each of the Defendants.

The Court must liberally construe the complaint in light of Plaintiffs' *pro se* status. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Taking into account the language of the complaint and its caption as well as the parties' interpretations of the complaint reflected in the briefing of the instant motions to dismiss, the Court construes Plaintiffs' claims to be raised in (1) Counts I and II against the Bremen PD and Officers Kile and Rybicki; (2) Count III against the Prosecutor's Office and Berndt and Sarber individually; and (3) Count IV as raised against all six of the defendants named in the caption.

---

[1] On May 17, 2018, the Court granted Attorney Gregory P. Gadson's motion to withdraw his appearance on behalf of the Defendant Prosecutors and the Deputy Prosecutors. [DE 42].

**B.     Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), dismissal of a complaint is appropriate when the complaint fails to allege a cause of action for which relief can be granted. When considering a 12(b)(6) motion to dismiss, the court should "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "However, [the court] need not ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *accord Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

Federal law only requires a plaintiff to provide a short and plain statement of the claim that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "Rule 8 . . . does not require "detailed factual allegations," . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that states a plausible claim for relief survives a motion to dismiss. *See id.* at 677–79; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (holding that the pleading stage does not impose a probability requirement but does require alleged facts to be plausible so as to entitle a person to relief even if recovery is remote and unlikely). Put another way, a complaint survives a motion to dismiss if it "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). A complaint fails if "it tenders 'naked assertion[s]'

6

devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[T]he plausibility standard [asks] for more than a sheer possibility that a defendant has acted unlawfully." *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (internal quotations and citations omitted).

Consequently, "a court need not accept as true 'legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Indeed, such conclusory statements are not entitled to the presumption of truth. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). With conclusory statements properly discounted, the court can then "determine whether the remaining factual allegations plausibly suggest an entitlement to relief. *Id.* (internal quotations and citations omitted). "[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). "[T]he complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests [while] plausibly suggest[ing] that the plaintiff has a right to relief [thus] raising that possibility above a 'speculative level'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations and citations omitted).

7

### B. The Defendant Prosecutors' Motion to Dismiss

Through their motion to dismiss, the Defendant Prosecutors argue that all claims against them should be dismissed because they are entitled to absolute immunity such that none of the counts state a claim against them for which relief can be granted under Fed. R. Civ. P. 12(b)(6). Their primary argument is that they are entitled to absolute immunity from suit because of their role as prosecuting attorneys.

"A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) (citing *Imbler v. Pachtman,* 424 U.S. 409, 410 (1976)). "To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of the 'functional' considerations discussed above. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (citing *Burns v. Reed,* 500 U.S. 478, 486 (1991)). "The analysis hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process." *Fields*, 672 F.3d at 510 (citing *Imbler,* 424 U.S. at 430, 431 n. 33).

In order to preserve the functioning of a prosecutor's public office, absolute immunity applies to "any action directly relevant to a prosecutor's ability to conduct a trial." *Van de Kamp,* 555 U.S. at 344–45. Beyond specific litigation activities, supervision or training of other prosecutors in administrative decisions related to the conduct of trial also warrants protection through absolute immunity. *Id.* at 344. However, a prosecutor's administrative duties of workplace hiring, payroll administration, and

maintenance of physical facilities are not shielded by prosecutorial immunity. *Id.*; *see also Fields*, 672 F.3d at 510–11.

Here, Plaintiffs fail to allege any action or conduct by the Marshall County Prosecutor's Office or the Defendant Prosecutors that is not directly related to the prosecution of criminal charges against Michael. Immunity applies to prosecutorial functions including initiating a prosecution and presenting the state's case. *Imbler*, 424 U.S. at 430. Plaintiffs argue that absolute immunity was never intended to apply to Section 1983 actions. Yet the authority Plaintiffs' rely upon to support their argument is not persuasive. For instance, Plaintiffs correctly rely upon *Pierson v. Ray*, 386 U.S. 547, 555 (1966) for the proposition that Section 1983 "does not abolish wholesale all common law immunities." However, Plaintiffs do not acknowledge that *Pierson* only addresses the immunity available to police officers without any analysis of prosecutorial immunity.

Plaintiffs also rely upon a 1973 Seventh Circuit case that concluded "that public defenders, like state prosecutors, and state and city attorney, enjoy a qualified immunity for acts performed in the discharge of their official duties." *John v. Hurt*, 489 F.2d 786, 788. (citing *Brown v. Joseph*, 463 F.2d 1046, 1048 (3rd Cir. 1972), *cert. denied*, 412 U.S. 950 in support of that proposition). Yet both cases predate *Imbler v. Pachtman*, in which the United States Supreme Court held that state prosecutors are entitled to absolute immunity for prosecutorial conduct. 424 U.S. at 410.

Plaintiffs' legal argument against absolute immunity cannot overcome the effect of *Imbler*. Therefore, the question here becomes whether the actions of the Prosecutor's

Office and the Defendant Prosecutors, as alleged by Plaintiffs, amount to prosecutorial functions such that absolute immunity applies and shields the Prosecutor's Office and the Defendant Prosecutors from liability for any of the Plaintiffs' claims.

In Count III, Plaintiffs reference the suppression hearing and resulting motion to dismiss in Michael's state court criminal case. Both of those events involve the Defendant Prosecutors presenting the state's case to the court. As such, they qualify as actions in the conduct of trial shielded by absolute immunity.

In Count III, Plaintiffs also imply that the Defendant Prosecutors improperly brought charges against Michael despite knowledge of the illegal search and faulty *Miranda* warning. Yet absolute immunity still applies to a prosecutor's decision to maintain the prosecution even after learning it was unsupported. *Davis v. Zirkelbach*, 149 F.3d 614, 617 (7th Cir. 1998). Therefore, the Prosecutor's Office and the Defendant Prosecutors are shielded from liability for initiating the case against Michael even if they knew about the illegal search and lack of *Miranda* warning.

As to Count IV, Plaintiffs do not reference any particular conduct by the Prosecutor's Office or the Defendant Prosecutors at all. Instead, the complaint expects the Defendants and the Court to infer that the initiation and prosecution of the case against Michael caused him and Janice emotional stress, difficulty at work, time off from work, travel costs, and legal costs from a mere recitation of the alleged effects of the prosecution on them. Even with this inference, Plaintiffs have only succeeded in pleading that the Prosecutor's Office and the Defendant Prosecutors engaged in prosecutorial functions protected by their absolute immunity.

10

Indiana law does not allow for a different conclusion. Plaintiffs contend that their complaint complies with Ind. Code § 34-13-3-5(c), which allows lawsuits to be filed against a government employee if the employee's act or omission causing a loss is alleged to have been "(1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Plaintiffs argue that their complaint demonstrates that the Defendant Prosecutors "maliciously prosecuted Mr. Dobbie, knowing that there were no exigent circumstances or probable cause to warrant a search of Mr. Dobbie's home, and that he was not read his Miranda rights." [DE 34 at 3–4]. Construing Plaintiffs' complaint liberally, Counts III and IV allege that the Prosecutor's Office and Defendant Prosecutors had knowledge of the illegal search and *Miranda* issue, but reference no facts to suggest that the prosecution was malicious.

Even if Plaintiffs had alleged maliciousness, the same chapter of the Indiana Code provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he initiation of a judicial . . . proceedings [or the] performance of a discretionary function . . . ." Ind. Code § 34-13-3-3(6)–(7). Therefore, without factual allegations in the complaint to support Plaintiffs' claim that the Prosecutor's Office and Defendant Prosecutors engaged in malicious prosecution of Michael, Plaintiffs cannot overcome either Indiana's statutory immunity for initiating a prosecution or the absolute immunity afforded through *Imbler*. See *Moore v. Corizon Health Inc.*, No. 1:17-CV-00987-SEB-DML, 2018 WL 1522658, at *9 (S.D. Ind. Mar. 28, 2018).

11

In light of absolute immunity, Plaintiffs have failed to plead plausible claims against the Prosecutor's Office and the Defendant Prosecutors as required under Fed. R. Civ. P. 12(b)(6), *Twombly*, and *Iqbal*. Accordingly, the undersigned recommends **GRANTING** the Defendant Prosecutors' motion to dismiss Counts III and IV of Plaintiff's complaint as pled against them. [DE 21].

    **C.**    **The Police Defendants' Motion to Dismiss**

The Police Defendants seek dismissal of all claims against them arguing that Plaintiffs' federal Section 1983 claims in Counts I and II are barred by the applicable statute of limitations, that the state law claim for intentional infliction of emotional distress fails to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6), that Plaintiffs have failed to state any claim against the Bremen PD, and that Janice Dobbie has failed to state a claim against any of the Police Defendants.

        **1.**    **Statute of Limitations**

            **a.**    **Federal Civil Rights Claims under 42 U.S.C. § 1983**

"Federal law does not set the limitations period in § 1983 actions." *Ray v. Maher*, 662 F.3d 770, 772–73 (7th Cir. 2011). "In order to determine the proper statute of limitations for § 1983 actions, a federal court must adopt the forum state's statute of limitations for personal injury claims." *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)); *see also* 42 U.S.C. § 1988(a). Indiana has a two-year statute of limitation for personal injury claims. Ind. Code § 34-11-2-4(a). Indiana also has a five-year statute of limitation for "action[s] against a sheriff; another public officer; or the officer and the officer's sureties on a public bond; growing

12

out of a liability incurred by doing an act in an official capacity, or by the omission of an official duty . . . ." Ind. Code § 34-11-2-6. However, the Seventh Circuit has adopted the Supreme Court's holding in *Wilson* and expressly rejected application of the five-year statute of limitation to civil rights actions raised against public officers under 42 U.S.C. § 1983. *Bebout v. Thomas*, 409 F. App'x 27, 29 (7th Cir. 2011) (citing *Wilson*, 471 U.S. at 279); *Campbell v. Chappelow*, 95 F.3d 576, 580 (7th Cir. 1996).

Therefore, the Court must determine whether the two-year statute of limitation bars Plaintiffs' claims against the Police Defendants. To do that, the Court must ascertain when each of Plaintiffs' claims accrued. While state law controls which statute of limitations applies to Section 1983 civil rights claims, federal law determines when a claim accrues. *Hondo, Inc. V. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994) (citing *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992)). "Civil rights claims [under Section 1983] accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Giesen*, 956 F.2d at 740.

### (i) Fourth Amendment (Count I)

"Fourth Amendment claim[s] accrues at the time of the search or seizure." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) (citing *Wallace v. Kato*, 549 U.S. 384, 396 (2007); *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010)). Therefore, Plaintiffs' Fourth Amendment claim accrued on April 2, 2015, when the search and seizure occurred. Plaintiffs do not dispute this conclusion. However, Plaintiffs did not file their complaint until June 2, 2017—more than two years after the claim accrued. The Seventh Circuit found a similar Section 1983 claim barred by the statute of limitation when the

13

arrest and search occurred in July 1988 but the complaint was not filed until January 1, 1991. *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995). Applying Indiana's two-year personal injury statute of limitations, Plaintiffs' Fourth Amendment claim is similarly barred.

### (ii) Fifth Amendment (Count II)

Plaintiffs' Fifth Amendment claim is based on the alleged lack of *Miranda* warnings. Plaintiffs can seek redress for statements obtained without a *Miranda* warning if the statement is used against the plaintiff in criminal proceedings. *See Sorenberger v. City of Knoxville,* 434 F.3d 1006, 1026–1027 (7th Cir. 2006). The cause of action accrues when the statement is first used against the plaintiff. *See id.* ("This use of [Plaintiff's] confession, if the confession is indeed found to have been elicited without *Miranda* warnings, allows a suit for damages under § 1983."). In other words, the cause of action for a Fifth Amendment violation accrues when the harm allegedly caused by the violation occurs. *See Gonzalez v. Entress*, 133 F.3d 551, 555 (7th Cir. 1998).

Plaintiffs claim that Michael's statements to the Officers led to his arrest and the filing of charges against him, both of which occurred on April 2, 2015. Thus, his cause of action accrued on the same day of his arrest and at the same time as his Fourth Amendment claim. *See, e.g.*, *McCann v. Vill. of Pontoon Beach*, No. CIV. 09-687-GPM, 2010 WL 2649914, at *2–3 (S.D. Ill. June 30, 2010) (finding that all of the plaintiff's constitutional violations, including a claim under the Fifth Amendment for the lack of a *Miranda* warning, accrued on the date of arrest and were barred by the statute of

limitations). Plaintiffs do not challenge this accrual date either. Accordingly, Plaintiffs' Fifth Amendment claim is also barred by the applicable two-year statute of limitations.

### b. Intentional Infliction of Emotional Distress (Count IV)

The statute of limitations for state law claims of intentional infliction of emotional distress ("IIED") is two years. *See* Ind. Code § 34-11-2-4(a); *Tsitsopoulou v. Univ. of Notre Dame*, No. 2:10-CV-309, 2011 WL 839669, at *4 (N.D. Ind. Mar. 7, 2011). A cause of action accrues at the time the act occurs that leads to the alleged distress. *See Johnson v. Blackwell*, 885 N.E.2d 25, 31 (Ind. Ct. App. 2008) (holding claim for infliction of emotional distress accrued at the time of the plaintiff's arrest). As a result, Plaintiffs' IIED claim accrued at the time of Michael's arrest on April 2, 2015, a conclusion Plaintiffs do not challenge. Moreover, all the Police Defendants' conduct alleged in the complaint occurred in April 2015, more than two years before the complaint was filed.

However, Indiana's five-year statute of limitation may apply to state law claims against public officers for IIED, like this raised by Plaintiffs against the Police Defendants. *See* Ind. Code § 34-11-2-6. The Seventh Circuit has not ruled with certainty as to whether Indiana's five-year statute would apply in a case like this, but has "suggested that the five-year statute might be the right one to use for state-law claims" generally even after recognizing that the Supreme Court in *Wilson v. Garcia* rejected it for federal Section 1983 claims. *Howlett v. Hack*, 794 F.3d 721, 726 (7th Cir. 2015) (citing *Campbell*, 95 F.3d at 580 n. 4). Like the court in *Howlett*, however, this Court need not resolve that question here because Plaintiffs have also failed to state a claim for IIED against the Police Defendants as discussed below.

### 2. Failure to State a Claim for IIED

To succeed on an IIED claim, a plaintiff must establish that the defendant "(1) engages in 'extreme and outrageous' conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another." *Creel v. I.C.E. & Assocs., Inc.*, 771 N.E.2d 1276, 1282 (Ind. Ct. App. 2002). The conduct at issue must be "so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Tucker v. Roman Catholic Diocese of Lafayette-In-Indiana*, 837 N.E.2d 596, 603 (Ind. Ct. App. 2005). Moreover, "[i]t is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991).

Here, Plaintiffs have failed to plausibly plead IIED against the Police Defendants. Count IV does not allege specific facts to support the legal conclusion Plaintiffs seek—that the Police Defendants intentionally inflicted emotional distress upon them. *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) (quoting *McCauley*, 671 F.3d at 616). First and foremost, Count IV mentions no conduct by the Police Defendants explicitly at all. Indeed, the experiences related in Count IV all seem to stem from the prosecution of criminal charges against Michael. However, the prosecution only occurred as the result of the incident with the Officers on April 2, 2015, suggesting a connection to the Police Defendants, if only in an attenuated way.

Second, Plaintiffs have not alleged that the Police Defendants engaged in extreme or outrageous conduct with the intent to emotionally harm them. Even acknowledging that the state court ultimately found the Officers' search illegal, the

undersigned cannot infer that their conduct was beyond all possible bounds of decency. *See tucker*, 837 N.E.2d at 603. Additionally, Plaintiff alleges no facts that allow the inference that the Police Defendants intended to emotionally harm Plaintiffs.

The Court recognizes that Plaintiffs' experience as the result of the April 2, 2015, incident was less than pleasant and likely to cause stress to the Plaintiffs. However, Plaintiffs' complaint has failed to state a plausible legal claim for IIED against the Police Defendants.

### 3. The Bremen Police Department

As discussed above, Plaintiffs complaint only references the Bremen PD as a separate entity in the caption. With no specific facts attributed to the Bremen PD, all possible claims against the Department in this complaint are likely to fail for lack of plausibility. *See Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 570.

Any theory of the Department's vicarious liability for the conduct of the Defendant Officers as its employees also fails because Section 1983 defendants cannot be held liable soley based upon *respondeat superior* liability. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). Municipal entities like the Bremen PD can only "be held liable under § 1983 when the execution of a government policy or custom is deemed to inflict an injury on a plaintiff." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (citing *Monell*, 436 U.S. at 694). Plaintiffs have alleged no policy or custom of the Bremen PD that could have required or led to Michael's arrest. Therefore, Plaintiffs have failed to state any claim against the Bremen PD.

### 4. Claims by Janice Dobbie

Janice is only referenced in the caption of Plaintiffs' complaint and in Count IV, where Plaintiffs allege she suffered stress and was forced to spend time and money as the result of the prosecution of Michael. Yet the complaint does not explain the relationship between Michael and Janice or allege that she was present during Michael's arrest or that the Police Defendants interacted with Janice at all. As a result, the Police Defendants cannot discern the nature of Janice's claim or claims against them from the complaint. *See Concentra Health Servs., Inc.*, 496 F.3d at 776. Accordingly Janice has failed to state any claim against the Police Defendants.

## III. CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that the Court **GRANTS** the Defendant Prosecutors' motion to dismiss [DE 21] and the Police Defendants' motion to dismiss [DE 25].

Specifically, the undersigned **RECOMMENDS** that the Court

(1) dismiss Counts III and IV with prejudice as to the Marshall County Deputy Prosecutors, Lynn Berndt, and Matthew E. Sarber in light of the applicability of absolute immunity to Plaintiffs' claims against them;

(2) dismiss Counts I and II against the City of Bremen Police Department, Bradley Kile, and Ronald Rybicki with prejudice because they are barred by the applicable statute of limitations; and

(3) dismiss Count IV against City of Bremen Police Department, Bradley Kile, and Ronald Rybicki with an opportunity to re-plead. *See, e.g., Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

The undersigned **NOTES** that dismissal with prejudice of Plaintiffs' federal claims pleaded in Counts I, II, and III eliminates the federal question that formed the basis of subject matter jurisdiction in this action to date.

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**
>
> **SO ORDERED.**

Dated this 18th day of July 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
